1 | William L. Miltner, Esq. SBN 139097
(*bill@miltnerlaw.com*)
2 | Robert C. Harvey, Esq., SBN 159224
(*robert@miltnerlaw.com*)
3 | MILTNER & MENCK, APC
402 West Broadway, Suite 800
4 | San Diego, California 92101
Telephone (619) 615-5333
5 | Telefax (619) 615-5334

6 | Attorneys for Plaintiff

7

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID MICHERY, an individual; | CASE NO. 2:20-CV-04409 |
| Plaintiff, | |
| v. | COMPLAINT FOR: |
| | 1. Defamation |
| | 2. Defamation by Implication |
| COMPLETE BUSINESS SOLUTIONS | 3. Intentional Infliction of Emotional Distress |
| GROUP, INC., a Delaware corporation dba Par Funding, | 4. False Light |
| Defendant. | DEMAND FOR JURY TRIAL |

Plaintiff David Michery ("Plaintiff" or "Mr. Michery"), by and through his undersigned attorneys, complaining of Defendant COMPLETE BUSINESS SOLUTIONS GROUP, INC., doing business as Par Funding, brings this action for defamation, defamation by implication, intentional infliction of emotional distress, and false light.

Upon information and belief, Plaintiff hereby alleges as follows:

## I. JURISDICTION AND VENUE

1. This Court has diversity jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, and Plaintiff and Defendant are residents of different states.

2.      Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims herein occurred in this judicial district, the Defendant does business within this judicial district, and the damages incurred by Plaintiff occurred within this judicial district.

## II.     PARTIES

### Plaintiff

3.      Plaintiff David Michery is an individual, and at all relevant times was, a resident of Orange County, California. Mr. Michery is the chief executive officer of Mullen Technologies, Inc. ("Mullen"). Mullen is a Southern California based electric vehicle manufacturer with international distribution that owns several synergistic businesses and has partnered with a leading automotive design and manufacturing company in China. As a result of that partnership, Mullen homologates and assembles cars in the United States for sales in North America. Mullen also engages in the sale and leasing of motor vehicles.

### Defendant

4.      Defendant COMPLETE BUSINESS SOLUTIONS GROUP, INC., doing business as Par Funding ("Defendant" or "CBSG") is a Delaware Corporation headquartered in Pennsylvania with filings that designate its principal place of business as Florida. CBSG is in the business of entering into Merchant Agreements with other businesses whereby CBSG purchases future receivables from the Merchant Seller for cash up front. CBSG than takes a specified percentage of the daily receipts directly from the Merchant Seller business's bank account each day or week. The rate of return on these "cash advances" by CBSG is far in excess of the legal rate in California.   Such transactions are unenforceable usurious loan transactions in California. Further, as part of these cash advance Merchant Agreements, CBSG has the Merchant Seller business sign a confession of judgment that allows CBSG to obtain a judgment without litigation, or any notice to the Merchant Seller, should CBSG claim the Merchant Seller business has defaulted under the terms of Merchant

Agreement.   These confessions of judgment are likewise unenforceable under California law.  In or about the last year, CBSG has sought and obtained in excess of 1000 confessed judgments in Philadelphia's Court of Common Pleas against Merchant Seller businesses claimed to be in breach of their Merchant Agreements.

### III.    SUBSTANTIVE ALLEGATIONS

5.    On or about December 27, 2019 Mullen and CBSG entered into an Agreement for the Purchase and Sale of Future Receivables (the "December Agreement") whereby CBSG purchased $177,000 of Mullen's future receivables for $150,000.00.   Pursuant to the December Agreement, CBSG was to be paid $11,800 per week for 15 weeks from the date of funding.   Thereafter, CBSG began making weekly withdrawals of $11,800 from Mullen's bank account.  Plaintiff was not a party to the December Agreement.

6.    On or about January 16, 2020 Mullen and CBSG entered into another Agreement for the Purchase and Sale of Future Receivables (the "January Agreement") whereby CBSG purchased $88,500 of receivables for $75,000.00. Pursuant to the January Agreement, CBSG was to be paid $1,264.29 per day for 70 days from the date of funding.  Thereafter, CBSG began making daily withdrawals of $1,264.29 from Mullen's bank account.  Plaintiff was not a party to the January Agreement.

7.    On or about February 7, 2020 Mullen and CBSG entered into another Agreement for the Purchase and Sale of Future Receivables (the "February Agreement") whereby CBSG purchased $143,700 of receivables for $125,000.00. Pursuant to the February Agreement, CBSG was to be paid $11,979.16 per week for 12 weeks from the date of funding.   Thereafter, CBSG began making weekly withdrawals of $11,979.16 from Mullen's bank account.  Plaintiff was not a party to the February Agreement.   Instead, Plaintiff had signed a guaranty for Mullen's performance of the February Agreement.

8.    On or about March 4, 2020 Governor Gavin Newsom declared a state of

emergency in the State of California related to the COVID-19 outbreak.

9.      On or about March 10, 2020 Mullen and CBSG entered into another Agreement for the Purchase and Sale of Future Receivables (the "March Agreement"). The March Agreement paid off both the December Agreement and the January Agreement.   In the March Agreement, CBSG purchased $270,000 for the total advanced of $200,000.   Pursuant to the March Agreement, CBSG was to be paid $2,454.55 per day for 110 days from the date of funding.   Thereafter, CBSG began making daily withdrawals of $2,454.55 from Mullen's bank account up through March 18, 2020.   Plaintiff was not a party to the March Agreement.   Instead, Plaintiff had signed a guaranty for Mullen's performance of the March Agreement.

10.      In both the February Agreement and March Agreements Mullen's D/B/A is identified therein as Mullen Technologies dba SI-NFUZ or Mullen Car Rental and Leasing dba Mullen Auto Sales dba Mullen Motor Cars.   Mr. Michery is not a d/b/a of Mullen.   The following provision clearly appears under the first paragraph of the February Agreement and the March Agreement:

| Legal Business Name ("Merchant Seller") | MULLEN TECHNOLOGIES INC |
|---|---|
| D/B/A | MULLEN TECHNOLOGIES DBA SI-NFUZ OR MULLEN CAR RENTAL AND LEASING DBA MULLEN AUTO SALES DBA MULLEN MOTOR CARS |

11.      On March 19, 2020, Governor Gavin Newsom issued Executive Order N-33-20 directing all individuals living in the State of California to stay home or at their place of residence, with limited exceptions for critical industry.   Mullen was not a critical industry and was essentially shut down by the executive order on March 19, 2020.

12.      Until March 19, 2020, Mullen had made all of its payments to CBSG on a timely basis.   As of March 19, 2020 and thereafter, Mullen's receivables fell 71% and expenses exceeded income.

13.     On or about March 23, Mullen informed CBSG that, due to the drastic and sudden decrease in receivables, Mullen would not be able to make the payments contemplated by the February and March Agreements.

14.     CBSG's right to receive payments under the February and March Agreements was expressly conditioned upon Mullen having receivables from which to pay CBSG, as the amount to be paid is a fraction of the receivables.

15.     Understanding the unique circumstances of the economic shutdown and the complete suspension of Mullen's business operations, CBSG understood that it had no right to receive full payments under the terms of their Agreements in light of the drastic reduction in Mullen's receivables.

16.     On or about March 23, 2020 CBSG agreed to take $1,000 per day until the COVID-19 Crisis passed.

17.     On March 25, 2020, CBSG electronically debited the agreed upon $1000 payment from Mullen.

18.     On or about March 24, 2020, unbeknownst to Mullen and despite the agreement on the adjusted payment amount, CBSG sent correspondence to Plaintiff's auto industry colleagues, industry associates, competitors, suppliers, potential business partners, and Mullen employees, that falsely identified Mr. Michery as the dba of Mullen and falsely stated that Mr. Michery, as the Merchant Seller, had defaulted on a secured merchant agreement between Mr. Michery and CBSG. A true and correct copy of that correspondence is attached hereto as Exhibit A.  Many of the recipients do business around the world, and have multiple offices globally.  Further several of the recipients are headquartered in California.

19.     On March 25, 2020, unbeknownst to Mullen and despite CBSG's withdrawal of $1,000 from Mullen's account, CBSG filed and obtained a confession of judgment against Mullen and Plaintiff in the Philadelphia Court of Common Pleas.

20.     While the February and March Purchase Agreements provide for a

confession of judgment against Mullen as Merchant Seller, the Guaranty signed by Mr. Michery only provides for a confession of judgment against Mullen, as Merchant Seller, and not Plaintiff individually.

21.     Upon receiving word that CBSG had sent the notices out industry wide, Mullen send cease and desist correspondence to CBSG regarding the overreaching scope of the communications and informing CBSG that such correspondence was damaging to Mullen's business and defamatory to Mullen and Mr. Michery.

22.     On or about May 4, 2020, CBSG sent Exhibit A to additional auto industry colleagues, industry associates, competitors, suppliers, potential business partners, and Mullen employees, in what appears to be an effort by CBSG to smear Mr. Michery's name in the industry in order to pressure Mullen to pay money to CBSG despite such payments being in contravention of the terms of the February and March Agreements.

23.     On or about May 24, 2020 CBSG, for a third time, sent Exhibit A out to auto industry colleagues, industry associates, competitors, suppliers, and potential business partners, in yet another attempt to extract money from Mullen by the continued smearing of Mr. Michery's name by this correspondence.

24.     Plaintiff has since researched CBSG and is informed and believes that CBSG has a pattern and practice of unscrupulous business practices directed at harming the Merchant Sellers with whom they do business under any claimed event of non-payment.  One such unscrupulous business practices of which complaint have been filed is Defendant sending similar Notices to many associated with the Merchant Sellers in default despite the lack of a business relationship with those Merchant Sellers.  When such notices are being sent to third parties without the claimed business relationship with the Merchant Seller, as was done presently, such tactic can only be seen as an effort to intentionally damage the reputation of the subject of the letters to punish and make an example of the targeted Merchant

Seller or guarantor, and shame them into payment.

25.     Presently, the February Agreement and the March Agreement could not be more clear as to Mullen's fictitious business names, and Mr. Michery is not a fictitious business name of Mullen.  Listing Mr. Michery as the dba of Mullen in Exhibit A was done intentionally by CBSG in order to cause harm to Mr. Michery's reputation in the automotive industry. CBSG has succeeded in its efforts.

## FIRST CAUSE OF ACTION

### (Defamation)

26.     Plaintiff incorporates by reference and realleges the paragraphs 1 through 25 as if set forth in full herein.

27.     CBSG made false and defamatory statements about Mr. Michery to Mr. Michery's auto industry colleagues, industry associates, competitors, suppliers, potential business partners, and Mullen employees by correspondence sent industry wide on or about March 24, 2020, May 4, 2020, and May 14, 2020.

28.     As shown in Exhibit A, CBSG ignored the dba of Mullen as clearly identified in the February Agreement and March Agreement and instead intentionally chose to name Mr. Michery personally in that correspondence.

29.     CBSG's correspondence were intended to and did falsely convey that Mr. Michery defaulted on a secured merchant agreement between Michery and CBSG.

30.     CBSG's accusations are reasonably understood to be statements of fact about Mr. Michery, and were understood by people who read them to be statements of fact about Mr. Michery.

31.     CBSG's statements in Exhibit A are false.  Mr. Michery is not the dba of Mullen. Mr. Michery neither entered into a secured merchant agreement with CBSG, nor did Mr. Michery default on a secured merchant agreement between Mr. Michery and CBSG.  Nor did Mullen itself default on the February or March

Agreements with CBSG. The notice was not sent because the recipient and/or its parent or subsidiary entity(ies) was an account debtor of Mr. Michery. CBSG did not buy any accounts-receivable from Mr. Michery. And there was no balance currently due and owing to CBSG under the February or March Agreement by Mr. Michery.

32. As Mullen was not in default under the February Agreement or March Agreement at the time the letter was sent, or at any time, the entire basis for the correspondence attached as Exhibit A and all the statements therein regarding a claimed default are false.

33. CBSG sent copies of Exhibit A industry wide on multiple occasions in an attempt to embarrass, shame, and cause emotional and economic pain to Mr. Michery.

34. CBSG's statements in Exhibit A are defamatory and libelous *per se*. CBSG's statements have damaged Mr. Michery's reputation and standing within the automotive industry, damaged Mr. Michery's relationships with his industry associates, colleagues and potential business partners in the automotive industry, and damaged his reputation and standing with Mullen employees.

35. CBSG had no applicable privilege or legal authorization to make these false and defamatory statements or, if they did, they abused it.

36. As set forth above in detail, CBSG published these statements with actual malice, including by disregarding their first-hand knowledge that there was no default by Mullen in the first place, disregarding their first-hand knowledge in their own agreements that Mr. Michery was not a dba of Mullen, and by intentionally causing the scope of CBSG's communications to be sent far beyond the reach of anything related to CBSG's agreement with Mullen.

37. CBSG made these false and defamatory statements intentionally, willfully, maliciously, and in conscious disregard of Plaintiff's rights and reputation and of the truth.

38.     Plaintiff is informed and believes that CBSG's defamatory falsehoods have been repeated and republished by people within the automotive industry, which was reasonably foreseeable to, and specifically intended and expected by, CBSG.

39.     As a direct and foreseeable result of CBSG's false and defamatory statements, Plaintiff has suffered financial and reputational harm.

40.     As a result of CBSG's false and defamatory statements, Plaintiff has been forced to make an expenditure of money to remedy the defamation.

41.     In view of the forgoing, Plaintiff is entitled to actual, assumed, punitive, and other damages in an amount to be specifically determined at trial.

## SECOND CAUSE OF ACTION

### (Defamation by Implication)

42.     Plaintiff incorporates by reference and realleges the paragraphs 1 through 41 as if set forth in full herein.

43.     CBSG sent the correspondence attached hereto as Exhibit A containing statements that were reasonably capable of sustaining an incorrect and defamatory meaning about Mr. Michery to an industry wide audience on or about March 24, 2020, May 4, 2020, and May 14, 2020.

44.     Specifically, CBSG juxtaposed Mr. Michery's name with the claim of Mullen's purported breach under Mullen's agreements with CBSG so as to imply a defamatory connection or otherwise create a defamatory implication concerning Mr. Michery.

45.     CBSG's statements in Exhibit A were intended to and did falsely convey that Mr. Michery was in default under an agreement with CBSG, and owed CBSG $324,893.19, or in later correspondence, $339,426.90.

46.     CBSG's statements and implications are reasonably understood to be statements of fact about Mr. Michery, and were understood by people who read them to be statements of fact about Mr. Michery.

47.     CBSG juxtaposed Mr. Michery's name with the false claim of a breach by Mullen so as to create a false implication that Mr. Michery had entered into a secured merchant agreement with CBSG, was in default under the secured merchant agreement and owed CBSG $324,893.19.  Mr. Michery has never entered into a secured merchant agreement with CBSG, was never in default under any secured merchant agreement with CBSG, and did not owe CBSG $324,893.19 or $339,426.90.

48.     CBSG's statements in Exhibit A create an implication that is defamatory and libelous per se. CBSGs' falsehoods have damaged Mr. Michery's reputation and standing within the automotive industry, damaged Mr. Michery's relationships with his industry associates, colleagues and potential business partners in the automotive industry, and damaged his reputation and standing with Mullen employees.

49.     CBSG had no applicable privilege or legal authorization to create these false and defamatory implications or, if they did, they abused it.

50.     As set forth above in detail, CBSG published these statements with actual malice, including by disregarding their own first-hand knowledge that Mr. Michery was not a dba Mullen, that Mullen was not in default under any of the Merchant Agreements, and when specifically put on notice of the truth, CBSG agreed to withdraw the notices, but then failed and refused to do so.  Upon information and belief, discovery will reveal additional evidence of CBSG's actual malice, including their financial motivation to shame, threaten and bully Mr. Michery and Mullen in order to extract financial concessions there from for profit.

51.     CBSGs juxtaposed Mr. Michery as the dba of Mullen so as to imply a defamatory connection between Mullen's claimed default or otherwise create a defamatory implication and they did this intentionally, willfully, maliciously, and in conscious disregard of Mr. Michery's rights and reputation and of the truth.

52.     Plaintiff is informed and believes that CBSG's defamatory falsehoods

have been repeated and republished by people within the automotive industry, which was reasonably foreseeable to, and specifically intended and expected by, CBSG.

53.     As a direct and foreseeable result of CBSG's false and defamatory implications, Plaintiff has suffered financial and reputational harm.

54.     As a result of CBSG's false and defamatory implications, Mr. Michery has been forced to make an expenditure of money to remedy the defamation.

55.     In view of the forgoing, Mr. Michery is entitled to actual, assumed, punitive, and other damages in an amount to be specifically determined at trial.

<h3 align="center">THIRD CAUSE OF ACTION</h3>

<h3 align="center">(Intentional Infliction of Emotional Distress)</h3>

56.     Plaintiff incorporates by reference and realleges the paragraphs 1 through 55 as if set forth in full herein.

57.     As alleged herein above, by sending Exhibit A to Mullen employees, Mr. Michery's industry associates, colleagues and potential business partners in the automotive industry. CBSG intended to inflict, or recklessly disregarded for the probability of inflicting, emotional distress upon Plaintiff.

58.     CBSG's conduct was extreme and outrageous in that CBSG intentionally created Exhibit A to target Mr. Michery personally, manufactured a false claim of default by Mullen and Mr. Michery, and then sent the Notice so far beyond any possible legitimate scope of relevant persons in order to damage Mr. Michery's name and business reputation industry wide.

59.     CBSG's conduct was also extreme and outrageous in that CBSG lacked any reasonable grounds for any belief in the truth of the statements in Exhibit A, had actual knowledge that the claims therein were false and sought to injure Mr. Michery by sending Exhibit A to the automotive industry.

60.     CBSG acted with actual malice and reckless disregard for the truth when creating Exhibit A and sending Exhibit A to the intended recipients.

61.     As result of CBSG's extreme and outrageous conduct, Plaintiff suffered severe anxiety and emotional distress.

62.     As a direct result of Lizzo's actions, Plaintiff has suffered and continues to suffer substantial damage and loss, including, but not limited to, pain and humiliation, indignity, damage and injury to Mr. Michery's professional reputation, and other incidental and consequential damages and expenses.

63.     As a result of CBSG's conduct, Plaintiff is entitled to compensatory damages, punitive damages, and such other legal and equitable relief as this Court deems just and proper.

## FOURTH CAUSE OF ACTION
### (False Light)

64.     Plaintiff incorporates by reference and realleges the paragraphs 1 through 63 as if set forth in full herein.

65.     CBSG, without Plaintiff's consent, sent Exhibit A to automotive industry professional containing the false statements therein accusing Plaintiff of being in default under a secured merchant agreement that Mr. Michery supposedly entered into with CBSG.

66.     CBSG published these statements in Exhibit A with knowledge that they were false or with reckless disregard for their falsity.

67.     CBSG lacked reasonable grounds for any belief in the truth of its statements and acted negligently in failing to determine the true facts because CBSG claimed Plaintiff was a dba of Mullen when its own contract clearly states otherwise and CBSG claimed a Mr. Michery had defaulted on a merchant agreement where no such default had taken place.

68.     CBSG acted with actual malice and reckless disregard for the truth when CBSG sent Exhibit A to Mullen employees, Mr. Michery's industry associates, colleagues and potential business partners in the automotive industry.

69.     By publishing the false statements, CBSG unreasonably, substantially

and seriously interfered with Plaintiff's right to privacy, as such statements placed Plaintiff in a false light.

70.     The false light in which Plaintiff was painted is highly offensive and objectionable to both Plaintiff and to a reasonable person of ordinary sensibilities.

71.     As a direct result of CBSG's actions, Plaintiff has suffered and continues to suffer substantial damage and loss, including, but not limited to, pain and suffering, emotional distress, insult, anguish, stress and anxiety, indignity, damage and injury to his professional reputation, and other incidental and consequential damages and expenses.

72.     As a result of CBSG's conduct, Plaintiff is entitled to compensatory damages, punitive damages, and such other legal and equitable relief as this Court deems just and proper.

WHEREFORE, the Plaintiff prays for judgment against CBSG as follows:

(1) for an award of compensatory damages in an amount to be proven at trial;

(2) for an award of punitive damages in an amount to be determined at trial;

(3) for temporary, preliminary and permanent injunctive relief enjoining CBSG from repeating their defamatory statements about Mr. Michery;

(4) for a mandatory injunction compelling CBSG to retract Exhibit A as adjudicated by this Court to be defamatory as to all recipients of Exhibit A at any time;

(5) for an award of costs of the suit incurred herein; and

(6) for such other and further relief as the Court deems appropriate.

Date: May 15, 2020                    **MILTNER & MENCK, APC**

By: _____
William L. Miltner, Esq.
Robert C. Harvey, Esq.
Attorneys for the Plaintiff
David Michery

1

## JURY DEMAND

2

Plaintiff hereby demands a trial by jury on all of the triable issues of fact and

3

damages stated herein.

4

Date:  May 15, 2020

MILTNER & MENCK, APC

5

6

By: _____

7

William L. Miltner, Esq.

Robert C. Harvey, Esq.

8

Attorneys for the Plaintiff

David Michery

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28