1   William L. Miltner, Esq. SBN 139097
    (*bill@miltnerlaw.com*)
2   Robert C. Harvey, Esq., SBN 159224
    (*robert@miltnerlaw.com*)
3   MILTNER & MENCK, APC
    402 West Broadway, Suite 800
4   San Diego, California 92101
    Telephone (619) 615-5333
5   Telefax (619) 615-5334

6   Attorneys for Plaintiff

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10  DAVID MICHERY, an individual;      )   CASE NO. 2:20-CV-04409-SVW-JPR
                                       )
11              Plaintiff,             )   DECLARATION OF WILLIAM L.
                                       )   MILTNER, ESQ. IN SUPPORT OF
12  v.                                 )   EX PARTE APPLICATION FOR A
                                       )   TEMPORARY RESTRAINING
13                                     )   ORDER AND SETTING AN ORDER
    COMPLETE BUSINESS SOLUTIONS )      TO SHOW CAUSE WHY A
14  GROUP, INC., a Delaware corporation)   PRELIMINARY INJUNCTION
    dba Par Funding,                   )   SHOULD NOT ISSUE
15                                     )
                                       )
16              Defendant.             )
                                       )
17  _____   )
                                       )
18
            I, William L. Miltner, do hereby state and declare the following:
19
            1.      I am a principal in the law firm of Miltner & Menck, APC, attorneys of
20
    recod for Plaintiff in the above-entitled action. I have personal knowledge of the facts
21
    set forth herein, and if called upon, I can and will testify to them in a court of law.
22
            2.      Attached hereto as Exhibit A is a true and correct copy the Complaint and
23
    Exhibits thereto filed in this action, Docket Numbers 1 and 1-1.
24
            3.      On June 5, 2020, upon learning about Complete Business Group
25
    Solutions, Inc.'s ("CBSG") death threat to Mr. Michery, the continued written
26
    correspondence to Mr. Michery by CBSG, and the visit to Mullen Auto Sales Fresno
27
    by third party Metro Site Inspections at the direction of CBSG, I sent opposing
28

─────────────────────────────────────────────────
DECLARATION OF WILLIAM L. MILTNER, ESQ. IN SUPPORT OF EX PARTE
APPLICATION FOR A TRO AND SETTING AN OSC RE: PRELIMINARY INJUNCTION
                                    1

counsel Brett Berman additional cease and desist correspondence.  A true and correct copy of that correspondence is attached hereto as Exhibit B.

4.      Earlier today, at approximately 4:00 p.m., I sent an email to Brett Berman and Joseph A. Ungaro II at their email addresses listed in their Notice of Appearance (Docket No. 14) informing them  that opposing papers must be filed no later than 3:00 p.m. on the first business day succeeding the day the ex parte was served, which would be tomorrow, Friday June 12, 2020.  I also informed them that if counsel were not going to oppose the ex parte application, they must inform the clerk at 213-894-2881.  And I informed them that counsel will be notified by the clerk of the Court's ruling.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of June, 2020 in San Diego, California

William L. Miltner, Esq.

EXHIBIT A TO MILTNER DECLARATION - COMPLAINT AND EXHIBITS

1 | William L. Miltner, Esq, SBN 139097
(bill@miltnerlaw.com)
2 | Robert C. Harvey, Esq., SBN 159224
(robert@miltnerlaw.com)
3 | MILTNER & MENCK, APC
402 West Broadway, Suite 800
4 | San Diego, California 92101
Telephone (619) 615-5333
5 | Telefax (619) 615-5334

6 | Attorneys for Plaintiff

7

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | DAVID MICHERY, an individual;          ) CASE NO. 2:20-CV-04409

11 |                    Plaintiff,          )
                                           ) COMPLAINT FOR:
12 | v.                                     ) 1. Defamation
                                           ) 2. Defamation by Implication
13 |                                        ) 3. Intentional Infliction of Emotional
      COMPLETE BUSINESS SOLUTIONS          )    Distress
14 | GROUP, INC., a Delaware corporation   ) 4. False Light
      dba Par Funding,                     )
15 |                                        )
                                           )
16 |                    Defendant.          ) DEMAND FOR JURY TRIAL
                                           )
17 | _____       )
                                           )
18

19 |      Plaintiff David Michery ("Plaintiff" or "Mr. Michery"), by and through his

20 | undersigned attorneys, complaining of Defendant COMPLETE BUSINESS

21 | SOLUTIONS GROUP, INC., doing business as Par Funding, brings this action for

22 | defamation, defamation by implication, intentional infliction of emotional distress, and

23 | false light.

24 |      Upon information and belief, Plaintiff hereby alleges as follows:

25 | **I.    JURISDICTION AND VENUE**

26 |      1.    This Court has diversity jurisdiction under 28 U.S.C. § 1332 because the

27 | matter in controversy exceeds the sum or value of $75,000, and Plaintiff and

28 | Defendant are residents of different states.

2.    Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims herein occurred in this judicial district, the Defendant does business within this judicial district, and the damages incurred by Plaintiff occurred within this judicial district.

## II.    PARTIES

### *Plaintiff*

3.    Plaintiff David Michery is an individual, and at all relevant times was, a resident of Orange County, California.  Mr. Michery is the chief executive officer of Mullen Technologies, Inc. ("Mullen").  Mullen is a Southern California based electric vehicle manufacturer with international distribution that owns several synergistic businesses and has partnered with a leading automotive design and manufacturing company in China.  As a result of that partnership, Mullen homologates and assembles cars in the United States for sales in North America.  Mullen also engages in the sale and leasing of motor vehicles.

### *Defendant*

4.    Defendant COMPLETE BUSINESS SOLUTIONS GROUP, INC., doing business as Par Funding ("Defendant" or "CBSG") is a Delaware Corporation headquartered in Pennsylvania with filings that designate its principal place of business as Florida.  CBSG is in the business of entering into Merchant Agreements with other businesses whereby CBSG purchases future receivables from the Merchant Seller for cash up front.  CBSG than takes a specified percentage of the daily receipts directly from the Merchant Seller business's bank account each day or week.  The rate of return on these "cash advances" by CBSG is far in excess of the legal rate in California.   Such transactions are unenforceable usurious loan transactions in California.  Further, as part of these cash advance Merchant Agreements, CBSG has the Merchant Seller business sign a confession of judgment that allows CBSG to obtain a judgment without litigation, or any notice to the Merchant Seller, should CBSG claim the Merchant Seller business has defaulted under the terms of Merchant

Agreement. These confessions of judgment are likewise unenforceable under California law. In or about the last year, CBSG has sought and obtained in excess of 1000 confessed judgments in Philadelphia's Court of Common Pleas against Merchant Seller businesses claimed to be in breach of their Merchant Agreements.

## III.   SUBSTANTIVE ALLEGATIONS

5.     On or about December 27, 2019 Mullen and CBSG entered into an Agreement for the Purchase and Sale of Future Receivables (the "December Agreement") whereby CBSG purchased $177,000 of Mullen's future receivables for $150,000.00. Pursuant to the December Agreement, CBSG was to be paid $11,800 per week for 15 weeks from the date of funding. Thereafter, CBSG began making weekly withdrawals of $11,800 from Mullen's bank account. Plaintiff was not a party to the December Agreement.

6.     On or about January 16, 2020 Mullen and CBSG entered into another Agreement for the Purchase and Sale of Future Receivables (the "January Agreement") whereby CBSG purchased $88,500 of receivables for $75,000.00. Pursuant to the January Agreement, CBSG was to be paid $1,264.29 per day for 70 days from the date of funding. Thereafter, CBSG began making daily withdrawals of $1,264.29 from Mullen's bank account. Plaintiff was not a party to the January Agreement.

7.     On or about February 7, 2020 Mullen and CBSG entered into another Agreement for the Purchase and Sale of Future Receivables (the "February Agreement") whereby CBSG purchased $143,700 of receivables for $125,000.00. Pursuant to the February Agreement, CBSG was to be paid $11,979.16 per week for 12 weeks from the date of funding. Thereafter, CBSG began making weekly withdrawals of $11,979.16 from Mullen's bank account. Plaintiff was not a party to the February Agreement. Instead, Plaintiff had signed a guaranty for Mullen's performance of the February Agreement.

8.     On or about March 4, 2020 Governor Gavin Newsom declared a state of

1    emergency in the State of California related to the COVID-19 outbreak.

2         9.    On or about March 10, 2020 Mullen and CBSG entered into another

3    Agreement for the Purchase and Sale of Future Receivables (the "March Agreement").

4    The March Agreement paid off both the December Agreement and the January

5    Agreement.   In the March Agreement, CBSG purchased $270,000 for the total

6    advanced of $200,000.   Pursuant to the March Agreement, CBSG was to be paid

7    $2,454.55 per day for 110 days from the date of funding.   Thereafter, CBSG began

8    making daily withdrawals of $2,454.55 from Mullen's bank account up through March

9    18, 2020.  Plaintiff was not a party to the March Agreement.  Instead, Plaintiff had

10   signed a guaranty for Mullen's performance of the March Agreement.

11        10.   In both the February Agreement and March Agreements Mullen's D/B/A

12   is identified therein as Mullen Technologies dba SI-NFUZ or Mullen Car Rental and

13   Leasing dba Mullen Auto Sales dba Mullen Motor Cars.  Mr. Michery is not a d/b/a

14   of Mullen.  The following provision clearly appears under the first paragraph of the

15   February Agreement and the March Agreement:

| Legal Business Name ("Merchant Seller") | MULLEN TECHNOLOGIES INC |
| D/B/A | MULLEN TECHNOLOGIES DBA SI-NFUZ OR MULLEN CAR RENTAL AND LEASING DBA MULLEN AUTO SALES DBA MULLEN MOTOR CARS |

21        11.   On March 19, 2020, Governor Gavin Newsom issued Executive Order

22   N-33-20 directing all individuals living in the State of California to stay home or at

23   their place of residence, with limited exceptions for critical industry.   Mullen was

24   not a critical industry and was essentially shut down by the executive order on

25   March 19, 2020.

26        12.   Until March 19, 2020, Mullen had made all of its payments to CBSG

27   on a timely basis.  As of March 19, 2020 and thereafter, Mullen's receivables fell

28   71% and expenses exceeded income.

13.     On or about March 23, Mullen informed CBSG that, due to the drastic and sudden decrease in receivables, Mullen would not be able to make the payments contemplated by the February and March Agreements.

14.     CBSG's right to receive payments under the February and March Agreements was expressly conditioned upon Mullen having receivables from which to pay CBSG, as the amount to be paid is a fraction of the receivables.

15.     Understanding the unique circumstances of the economic shutdown and the complete suspension of Mullen's business operations, CBSG understood that it had no right to receive full payments under the terms of their Agreements in light of the drastic reduction in Mullen's receivables.

16.     On or about March 23, 2020 CBSG agreed to take $1,000 per day until the COVID-19 Crisis passed.

17.     On March 25, 2020, CBSG electronically debited the agreed upon $1000 payment from Mullen.

18.     On or about March 24, 2020, unbeknownst to Mullen and despite the agreement on the adjusted payment amount, CBSG sent correspondence to Plaintiff's auto industry colleagues, industry associates, competitors, suppliers, potential business partners, and Mullen employees, that falsely identified Mr. Michery as the dba of Mullen and falsely stated that Mr. Michery, as the Merchant Seller, had defaulted on a secured merchant agreement between Mr. Michery and CBSG. A true and correct copy of that correspondence is attached hereto as Exhibit A. Many of the recipients do business around the world, and have multiple offices globally. Further several of the recipients are headquartered in California.

19.     On March 25, 2020, unbeknownst to Mullen and despite CBSG's withdrawal of $1,000 from Mullen's account, CBSG filed and obtained a confession of judgment against Mullen and Plaintiff in the Philadelphia Court of Common Pleas.

20.     While the February and March Purchase Agreements provide for a

confession of judgment against Mullen as Merchant Seller, the Guaranty signed by Mr. Michery only provides for a confession of judgment against Mullen, as Merchant Seller, and not Plaintiff individually.

21.    Upon receiving word that CBSG had sent the notices out industry wide, Mullen send cease and desist correspondence to CBSG regarding the overreaching scope of the communications and informing CBSG that such correspondence was damaging to Mullen's business and defamatory to Mullen and Mr. Michery.

22.    On or about May 4, 2020, CBSG sent Exhibit A to additional auto industry colleagues, industry associates, competitors, suppliers, potential business partners, and Mullen employees, in what appears to be an effort by CBSG to smear Mr. Michery's name in the industry in order to pressure Mullen to pay money to CBSG despite such payments being in contravention of the terms of the February and March Agreements.

23.    On or about May 24, 2020 CBSG, for a third time, sent Exhibit A out to auto industry colleagues, industry associates, competitors, suppliers, and potential business partners, in yet another attempt to extract money from Mullen by the continued smearing of Mr. Michery's name by this correspondence.

24.    Plaintiff has since researched CBSG and is informed and believes that CBSG has a pattern and practice of unscrupulous business practices directed at harming the Merchant Sellers with whom they do business under any claimed event of non-payment.  One such unscrupulous business practices of which complaint have been filed is Defendant sending similar Notices to many associated with the Merchant Sellers in default despite the lack of a business relationship with those Merchant Sellers.  When such notices are being sent to third parties without the claimed business relationship with the Merchant Seller, as was done presently, such tactic can only be seen as an effort to intentionally damage the reputation of the subject of the letters to punish and make an example of the targeted Merchant

Seller or guarantor, and shame them into payment.

25.    Presently, the February Agreement and the March Agreement could not be more clear as to Mullen's fictitious business names, and Mr. Michery is not a fictitious business name of Mullen.  Listing Mr. Michery as the dba of Mullen in Exhibit A was done intentionally by CBSG in order to cause harm to Mr. Michery's reputation in the automotive industry. CBSG has succeeded in its efforts.

## FIRST CAUSE OF ACTION

### (Defamation)

26.    Plaintiff incorporates by reference and realleges the paragraphs 1 through 25 as if set forth in full herein.

27.    CBSG made false and defamatory statements about Mr. Michery to Mr. Michery's auto industry colleagues, industry associates, competitors, suppliers, potential business partners, and Mullen employees by correspondence sent industry wide on or about March 24, 2020, May 4, 2020, and May 14, 2020.

28.    As shown in Exhibit A, CBSG ignored the dba of Mullen as clearly identified in the February Agreement and March Agreement and instead intentionally chose to name Mr. Michery personally in that correspondence.

29.    CBSG's correspondence were intended to and did falsely convey that Mr. Michery defaulted on a secured merchant agreement between Michery and CBSG.

30.    CBSG's accusations are reasonably understood to be statements of fact about Mr. Michery, and were understood by people who read them to be statements of fact about Mr. Michery.

31.    CBSG's statements in Exhibit A are false.  Mr. Michery is not the dba of Mullen. Mr. Michery neither entered into a secured merchant agreement with CBSG, nor did Mr. Michery default on a secured merchant agreement between Mr. Michery and CBSG.  Nor did Mullen itself default on the February or March

Agreements with CBSG. The notice was not sent because the recipient and/or its parent or subsidiary entity(ies) was an account debtor of Mr. Michery. CBSG did not buy any accounts-receivable from Mr. Michery. And there was no balance currently due and owing to CBSG under the February or March Agreement by Mr. Michery.

32.     As Mullen was not in default under the February Agreement or March Agreement at the time the letter was sent, or at any time, the entire basis for the correspondence attached as Exhibit A and all the statements therein regarding a claimed default are false.

33.     CBSG sent copies of Exhibit A industry wide on multiple occasions in an attempt to embarrass, shame, and cause emotional and economic pain to Mr. Michery.

34.     CBSG's statements in Exhibit A are defamatory and libelous *per se*. CBSG's statements have damaged Mr. Michery's reputation and standing within the automotive industry, damaged Mr. Michery's relationships with his industry associates, colleagues and potential business partners in the automotive industry, and damaged his reputation and standing with Mullen employees.

35.     CBSG had no applicable privilege or legal authorization to make these false and defamatory statements or, if they did, they abused it.

36.     As set forth above in detail, CBSG published these statements with actual malice, including by disregarding their first-hand knowledge that there was no default by Mullen in the first place, disregarding their first-hand knowledge in their own agreements that Mr. Michery was not a dba of Mullen, and by intentionally causing the scope of CBSG's communications to be sent far beyond the reach of anything related to CBSG's agreement with Mullen.

37.     CBSG made these false and defamatory statements intentionally, willfully, maliciously, and in conscious disregard of Plaintiff's rights and reputation and of the truth.

38.     Plaintiff is informed and believes that CBSG's defamatory falsehoods have been repeated and republished by people within the automotive industry, which was reasonably foreseeable to, and specifically intended and expected by, CBSG.

39.     As a direct and foreseeable result of CBSG's false and defamatory statements, Plaintiff has suffered financial and reputational harm.

40.     As a result of CBSG's false and defamatory statements, Plaintiff has been forced to make an expenditure of money to remedy the defamation.

41.     In view of the forgoing, Plaintiff is entitled to actual, assumed, punitive, and other damages in an amount to be specifically determined at trial.

## SECOND CAUSE OF ACTION

### (Defamation by Implication)

42.     Plaintiff incorporates by reference and realleges the paragraphs 1 through 41 as if set forth in full herein.

43.     CBSG sent the correspondence attached hereto as Exhibit A containing statements that were reasonably capable of sustaining an incorrect and defamatory meaning about Mr. Michery to an industry wide audience on or about March 24, 2020, May 4, 2020, and May 14, 2020.

44.     Specifically, CBSG juxtaposed Mr. Michery's name with the claim of Mullen's purported breach under Mullen's agreements with CBSG so as to imply a defamatory connection or otherwise create a defamatory implication concerning Mr. Michery.

45.     CBSG's statements in Exhibit A were intended to and did falsely convey that Mr. Michery was in default under an agreement with CBSG, and owed CBSG $324,893.19, or in later correspondence, $339,426.90.

46.     CBSG's statements and implications are reasonably understood to be statements of fact about Mr. Michery, and were understood by people who read them to be statements of fact about Mr. Michery.

Case 2:20-cv-04409-SVW-JPR   Document 16-3   Filed 06/11/20   Page 13 of 23   Page ID
#:344
Case 2:20-cv-04409-SVW-JPR   Document 1   Filed 05/15/20   Page 10 of 14   Page ID #:10

47.     CBSG juxtaposed Mr. Michery's name with the false claim of a breach by Mullen so as to create a false implication that Mr. Michery had entered into a secured merchant agreement with CBSG, was in default under the secured merchant agreement and owed CBSG $324,893.19.  Mr. Michery has never entered into a secured merchant agreement with CBSG, was never in default under any secured merchant agreement with CBSG, and did not owe CBSG $324,893.19 or $339,426.90.

48.     CBSG's statements in Exhibit A create an implication that is defamatory and libelous per se. CBSGs' falsehoods have damaged Mr. Michery's reputation and standing within the automotive industry, damaged Mr. Michery's relationships with his industry associates, colleagues and potential business partners in the automotive industry, and damaged his reputation and standing with Mullen employees.

49.     CBSG had no applicable privilege or legal authorization to create these false and defamatory implications or, if they did, they abused it.

50.     As set forth above in detail, CBSG published these statements with actual malice, including by disregarding their own first-hand knowledge that Mr. Michery was not a dba Mullen, that Mullen was not in default under any of the Merchant Agreements, and when specifically put on notice of the truth, CBSG agreed to withdraw the notices, but then failed and refused to do so.  Upon information and belief, discovery will reveal additional evidence of CBSG's actual malice, including their financial motivation to shame, threaten and bully Mr. Michery and Mullen in order to extract financial concessions there from for profit.

51.     CBSGs juxtaposed Mr. Michery as the dba of Mullen so as to imply a defamatory connection between Mullen's claimed default or otherwise create a defamatory implication and they did this intentionally, willfully, maliciously, and in conscious disregard of Mr. Michery's rights and reputation and of the truth.

52.     Plaintiff is informed and believes that CBSG's defamatory falsehoods

1   have been repeated and republished by people within the automotive industry,

2   which was reasonably foreseeable to, and specifically intended and expected by,

3   CBSG.

4       53.    As a direct and foreseeable result of CBSG's false and defamatory

5   implications, Plaintiff has suffered financial and reputational harm.

6       54.    As a result of CBSG's false and defamatory implications, Mr. Michery

7   has been forced to make an expenditure of money to remedy the defamation.

8       55.    In view of the forgoing, Mr. Michery is entitled to actual, assumed,

9   punitive, and other damages in an amount to be specifically determined at trial.

10                       **THIRD CAUSE OF ACTION**

11            **(Intentional Infliction of Emotional Distress)**

12       56.    Plaintiff incorporates by reference and realleges the paragraphs 1

13   through 55 as if set forth in full herein.

14       57.    As alleged herein above, by sending Exhibit A to Mullen employees,

15   Mr. Michery's industry associates, colleagues and potential business partners in the

16   automotive industry. CBSG intended to inflict, or recklessly disregarded for the

17   probability of inflicting, emotional distress upon Plaintiff.

18       58.    CBSG's conduct was extreme and outrageous in that CBSG

19   intentionally created Exhibit A to target Mr. Michery personally, manufactured a

20   false claim of default by Mullen and Mr. Michery, and then sent the Notice so far

21   beyond any possible legitimate scope of relevant persons in order to damage Mr.

22   Michery's name and business reputation industry wide.

23       59.    CBSG's conduct was also extreme and outrageous in that CBSG

24   lacked any reasonable grounds for any belief in the truth of the statements in

25   Exhibit A, had actual knowledge that the claims therein were false and sought to

26   injure Mr. Michery by sending Exhibit A to the automotive industry.

27       60.    CBSG acted with actual malice and reckless disregard for the truth

28   when creating Exhibit A and sending Exhibit A to the intended recipients.

61.  As result of CBSG's extreme and outrageous conduct, Plaintiff suffered severe anxiety and emotional distress.

62.  As a direct result of Lizzo's actions, Plaintiff has suffered and continues to suffer substantial damage and loss, including, but not limited to, pain and humiliation, indignity, damage and injury to Mr. Michery's professional reputation, and other incidental and consequential damages and expenses.

63.  As a result of CBSG's conduct, Plaintiff is entitled to compensatory damages, punitive damages, and such other legal and equitable relief as this Court deems just and proper.

### FOURTH CAUSE OF ACTION

### (False Light)

64.  Plaintiff incorporates by reference and realleges the paragraphs 1 through 63 as if set forth in full herein.

65.  CBSG, without Plaintiff's consent, sent Exhibit A to automotive industry professional containing the false statements therein accusing Plaintiff of being in default under a secured merchant agreement that Mr. Michery supposedly entered into with CBSG.

66.  CBSG published these statements in Exhibit A with knowledge that they were false or with reckless disregard for their falsity.

67.  CBSG lacked reasonable grounds for any belief in the truth of its statements and acted negligently in failing to determine the true facts because CBSG claimed Plaintiff was a dba of Mullen when its own contract clearly states otherwise and CBSG claimed a Mr. Michery had defaulted on a merchant agreement where no such default had taken place.

68.  CBSG acted with actual malice and reckless disregard for the truth when CBSG sent Exhibit A to Mullen employees, Mr. Michery's industry associates, colleagues and potential business partners in the automotive industry.

69.  By publishing the false statements, CBSG unreasonably, substantially

Case 2:20-cv-04409-SVW-JPR   Document 16-3   Filed 06/11/20   Page 16 of 23   Page ID
#:347
Case 2:20-cv-04409-SVW-JPR   Document 1   Filed 05/15/20   Page 13 of 14   Page ID #:13

and seriously interfered with Plaintiff's right to privacy, as such statements placed Plaintiff in a false light.

70.    The false light in which Plaintiff was painted is highly offensive and objectionable to both Plaintiff and to a reasonable person of ordinary sensibilities.

71.    As a direct result of CBSG's actions, Plaintiff has suffered and continues to suffer substantial damage and loss, including, but not limited to, pain and suffering, emotional distress, insult, anguish, stress and anxiety, indignity, damage and injury to his professional reputation, and other incidental and consequential damages and expenses.

72.    As a result of CBSG's conduct, Plaintiff is entitled to compensatory damages, punitive damages, and such other legal and equitable relief as this Court deems just and proper.

WHEREFORE, the Plaintiff prays for judgment against CBSG as follows:

(1) for an award of compensatory damages in an amount to be proven at trial;

(2) for an award of punitive damages in an amount to be determined at trial;

(3) for temporary, preliminary and permanent injunctive relief enjoining CBSG from repeating their defamatory statements about Mr. Michery;

(4) for a mandatory injunction compelling CBSG to retract Exhibit A as adjudicated by this Court to be defamatory as to all recipients of Exhibit A at any time;

(5) for an award of costs of the suit incurred herein; and

(6) for such other and further relief as the Court deems appropriate.

Date: May 15, 2020                          MILTNER & MENCK, APC


                                    By: _____
                                        William L. Miltner, Esq.
                                        Robert C. Harvey, Esq.
                                        Attorneys for the Plaintiff
                                        David Michery

1

## JURY DEMAND

2      Plaintiff hereby demands a trial by jury on all of the triable issues of fact and

3   damages stated herein.

4   Date:  May 15, 2020                           MILTNER & MENCK, APC

5

6                                        By: _____

7                                            William L. Miltner, Esq.
                                            Robert C. Harvey, Esq.
8                                            Attorneys for the Plaintiff
                                            David Michery
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A TO COMPLAINT OF DAVID MICHERY

Case 2:20-cv-04409-SVW-JPR   Document 16-3   Filed 06/11/20   Page 19 of 23   Page ID
#:350
Case 2:20-cv-04409-SVW-JPR   Document 1-1   Filed 05/15/20   Page 2 of 3   Page ID #:16



# NOTICE OF ASSIGNMENT & LIEN

# FIRST NOTICE

RE: *Mullen Technologies D/B/A David Michery*

Dear Sir or Madam:

This notice is being sent you because you and/or its parent or subsidiary entity(ies) is an account debtor of *Mullen Technologies D/B/A David Michery* ("Merchant"), located at **325 N PUENTE ST STE A BREA, CA 92821-5273**, and pursuant to Section 9-406 of the Uniform Commercial Code ("UCC").

Merchant has defaulted on a secured merchant agreement between Merchant and CBSG (the "Agreement").  Under the contract, CBSG bought from Merchant certain accounts-receivable (collectively, "Receivables"), thus making CBSG the owner of those Receivables.[1] The balance currently due and owing to CBSG under the Agreement is $324,893.19.

In addition to the buying the Receivables, and in accordance with the Agreement, CBSG filed a UCC-1 financing statement with the Secretary of State of CA. A copy of the UCC-1 is attached for your reference.

You have made payments to Merchant, representing some of the Receivables CBSG bought from Merchant.  Please be advised, while it is understood you have a relationship with Merchant and not with CBSG, in accordance with the law, the above referenced Agreement and with UCC Section 9-406, you are instructed to hold in reserve all funds payable to Merchant and forward them to CBSG immediately upon receipt of this letter and to continue doing so until you receive from a us a release of the UCC-1 filing.

We appreciate your cooperation and anticipate your compliance with this matter.  If you have any questions, please contact me at 215-600-1779 or legaldepartment@parfunding.com.

Danielle Loser
**215-600-1779**
Collection / Legal Department
20 N. 3rd Street
Philadelphia, PA 19106

---

The Agreement provides, in pertinent part:

Seller/Merchant hereby sells, assigns and transfers to CBSG (making CBSG the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Seller/Merchant's future receipts, accounts, contract rights, and obligations due to Seller/Merchant that arise from or relate to the payment of monies to Seller/Merchant from Seller/Merchant's customers and/or other third party payors (collectively the "Receipts" defined as all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of Seller/Merchant's business) until such time as the "Receipts Purchased Amount (RPA)" has been delivered by Seller/Merchant to CBSG.



# NOTICE OF ASSIGNMENT & LIEN

## FIRST NOTICE

**RE:** *Mullen Technologies D/B/A David Michery*

Dear Sir or Madam:

This notice is being sent you because you and/or its parent or subsidiary entity(ies) is an account debtor of *Mullen Technologies D/B/A David Michery* ("Merchant"), located at **325 N PUENTE ST STE A BREA, CA 92821-5273**, and pursuant to Section 9-406 of the Uniform Commercial Code ("UCC").

Merchant has defaulted on a secured merchant agreement between Merchant and CBSG (the "Agreement"). Under the contract, CBSG bought from Merchant certain accounts-receivable (collectively, "Receivables"), thus making CBSG the owner of those Receivables.[1] The balance currently due and owing to CBSG under the Agreement is $339,426.90.

In addition to the buying the Receivables, and in accordance with the Agreement, CBSG filed a UCC-1 financing statement with the Secretary of State of CA. A copy of the UCC-1 is attached for your reference.

You have made payments to Merchant, representing some of the Receivables CBSG bought from Merchant. Please be advised, while it is understood you have a relationship with Merchant and not with CBSG, in accordance with the law, the above referenced Agreement and with UCC Section 9-406, you are instructed to hold in reserve all funds payable to Merchant and forward them to CBSG immediately upon receipt of this letter and to continue doing so until you receive from a us a release of the UCC-1 filing.

We appreciate your cooperation and anticipate your compliance with this matter. If you have any questions, please contact me at 215-600-1779 or legaldepartment@parfunding.com.

Danielle Loser
**215-600-1779**
Collection / Legal Department
20 N. 3rd Street
Philadelphia, PA 19106

---

[1] The Agreement provides, in pertinent part:

Seller/Merchant hereby sells, assigns and transfers to CBSG (making CBSG the absolute owner) in consideration of the funds provided ("**Purchase Price**") specified below, all of Seller/Merchant's future receipts, accounts, contract rights, and obligations due to Seller/Merchant that arise from or relate to the payment of monies to Seller/Merchant from Seller/Merchant's customers and/or other third party payers (collectively the "Receipts" defined as all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of Seller/Merchant's business) until such time as the "**Receipts Purchased Amount (RPA)**" has been delivered by Seller/Merchant to CBSG.

EXHIBIT B TO MILTNER DECLARATION - JUNE 5, 2020 CEASE AND
DESIST CORRESPONDENCE TO COUNSEL FOR CBSG

WILLIAM L. MILTNER

WALTER E. MENCK

ROBERT C. HARVEY

AUTUMN S. FRYE

# MILTNER
# & MENCK, APC

EMERALD PLAZA
402 W. Broadway
Suite 800
San Diego, CA 92101
(619) 615-5333
(619) 615-5334 Fax

WWW.MILTNERLAW.COM

June 5, 2020

*Sent Via Electronic Mail:*
BBerman@foxrothschild.com

Brett A. Berman, Esq.
Fox Rothschild LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103

Re:   **David Michery v. Complete Business Solutions Group, Inc., dba Par Funding**
**U.S. District Court, Central District of California**
**Case No. 2:20-CV-04409-SVW-JPR**

Dear Mr. Berman,

On March 24, 2020 we sent correspondence to Danielle Loser, Collection/Legal Department for Complete Business Solutions Group, Inc. dba Par Funding ("Par") demanding that Par cease and desist from sending out the correspondence at issue in the above-referenced action. Par continued to send out the defamatory correspondence, and the above-referenced action was filed.

It has come to our attention that your client continues to communicate directly with our client. First, Corey C. Kalkanoglu sent undated written correspondence to Mr. Michery this week seeking to collect on the debt that is in dispute in the Pennsylvania action.

Also this week, Mr. Michery received a call from a blocked number in Pennsylvania. He took the call and the caller identified himself as being from Par. Our client told the caller that he had counsel and to speak to his attorneys, and the conversation ended.

The Par representative then called right back and said "fuck your attorneys, you owe Par a million dollars, we know where you live and we're going to kill your attorneys and then kill you." The caller then made multiple additional calls to Mr. Michery, said nothing and hung up, all in a clear attempt to harass of Mr. Michery.

And it has just come to our attention that, Gayle, a representative from Metro Site Inspections appeared at Mullen Auto Sales Fresno at Par's direction claiming to be there to inspect our client's financial receipts in order to report to Par whether Par should make a loan to Mullen. Clearly, there is no loan application being processed and this was done in an attempt to further harass our client.

MILTNER & MENCK, APC

BRETT BERMAN
June 5, 2020
Page 2

     We hereby demand that Par, it's agents, employees and anyone acting on its behalf, cease and desist all correspondence with David Michery, Mullen Technologies, Inc., and any of their agents and employees.  No one in any way related to Par is to show up at any of Mullen's places of business.  Any and all legitimate communication by Par to Mr. Michery, Mullen Technologies, Inc., or their agents or employees shall be sent to our office.

     We further demand that Par cease and desist all correspondence as set forth in the above-referenced action to any third parties in any way related to David Michery, including, but not limited to correspondence to any of Mr. Michery's auto industry colleagues, industry associates, competitors, suppliers, potential business partners, or Mullen employees.  Par's continued slandering of Mr. Michery's name and reputation serves only to further bolster Mr. Michery's claim for punitive damages against Par.

     Your client's threats will be met with the full force of the law.

Sincerely,

MILTNER & MENCK, APC

By: _____
      William L. Miltner, Esq.

cc: David Michery, Jonathan Rardin, Esq.